IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PATRICIA VANDENBRAAK, et al., ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 01-482 KAJ |
| ) | Civil Action No. 01-492 KAJ |
| ANTHONY ALFIERI, et al., ) | |
| ) | CONSOLIDATED |
| Defendants. ) | |

### MEMORANDUM ORDER

I. **INTRODUCTION**

Before me is a Motion for New Trial (Docket Item ["D.I."] 153; the "Motion") brought by Plaintiffs Patricia, Zachary, and Jacquelyn Vandenbraak (collectively, "Plaintiffs"). Plaintiffs sued Defendants Anthony Alfieri ("Dr. Alfieri") and Delaware Cardiovascular Associates (collectively, "Defendants") for medical malpractice in the treatment of James Michael Vandenbraak ("Mr. Vandenbraak"), who died of heart failure. (D.I. 1 at ¶¶ 14-26.) After a trial, a jury found that Defendants were not negligent in the care of Mr. Vandenbraak. (D.I. 153, Exhibit D at ¶ 1.) Plaintiffs here move for a new trial, claiming that Defendants' counsel misstated the law during his closing argument and that this misstatement had a reasonable probability of influencing the verdict. (D.I. 153 at ¶¶ 4-10.) Jurisdiction is appropriate under 28 U.S.C. § 1332. For the reasons that follow, I will deny Plaintiffs' motion.

## II.   BACKGROUND

The facts of this case were fully developed at trial, and only a short summary will be presented here. After suffering a heart attack in 1997, Mr. Vandenbraak was treated by Dr. Alfieri. (Trial Transcript, B-132:23 - B-133:5.) In July of 1999, while on vacation with his family, Mr. Vandenbraak experienced chest pain. (Trial Transcript, C-28:7-10.) His wife, Patricia Vandenbraak, called Dr. Vincent Marmo, a cardiologist on call at Dr. Alfieri's practice, who advised Mr. Vandenbraak to go to the nearest medical facility to be examined. (Trial Transcript, C-27:16 - C-29:4.) Instead of following this advice, Mr. Vandenbraak scheduled an appointment with Dr. Alfieri for later that week. (Trial Transcript, C-29:21 - C-30:7.)

Mrs. Vandenbraak claims that, during the appointment, Dr. Alfieri assured her and her husband that Mr. Vandenbraak was in good health and scheduled a stress test for the following week. (Trial Transcript, C-33:23-25.) Dr. Alfieri, on the other hand, claims that he recommended that Mr. Vandenbraak immediately go to the hospital to have a stress test, and that Mr. Vandenbraak refused. (Trial Transcript, B-62:19 - B-66:23.) The stress test was scheduled for a week later. (Trial Transcript, B-67:23 - B-68:4.) Mr. Vandenbraak returned to his vacation and died two days later. (Trial Transcript, C-40:21-24). The death certificate listed the cause of death as myocardial infarction. (Trial Transcript, B-101:25 - B-102:1.)

In July of 2001, Plaintiffs filed a wrongful death claim under 10 Del. C. § 3724, and a survival action pursuant to 10 Del. C. § 3704, alleging that Dr. Alfieri provided negligent medical care to Mr. Vandenbraak and that the sub-standard care caused Mr.

Vandenbraak's death.  (D.I. 155 at ¶ 1; D.I. 1 at ¶¶ 14-26.)  In May of 2005, the case was tried to a jury.

During his closing argument, counsel for Defendants stated:

> "And the problem you have with folks like [defense expert Dr.] Calkins is, you say, they think about the standard of care at a level that's so much higher than what the standard of care requirement is under the law.  See, the law sets a minimal standard below which —"

(D.I. 153, Exhibit A at 72:6-10.)  Plaintiffs objected to this statement the moment it was made, noting that Dr. Calkins had not testified to a "higher level of standard of care." (*Id.* at 72:19-20.)  After a conversation at sidebar, the Court allowed defense counsel to cure his misstatement, which he attempted to do with his next statement to the jury: "[t]he standard of care is a national standard." (*Id.* at 73:9-10.)  There were no more objections by Plaintiffs' counsel during closing arguments, and, of course, Plaintiff's counsel had the final opportunity to speak to the jury in rebuttal argument.

During deliberations, the jury sent one question to the court, asking for "advice on how to clearly determine 'standard of care' for providing 'minimum care.'" (D.I. 153, Exhibit C.)  After consulting with counsel, I responded to this question by directing the jury to follow the instructions already given.  (Trial Transcript, E-12:5-11.)  The jury subsequently returned a verdict for the Defendants.  (D.I. 153, Exhibit D.)

## III.   DISCUSSION

Federal Rule of Civil Procedure 59(a) states that "a new trial may be granted . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a).  Where a party requests a new trial based on an allegation of

improper remarks by counsel, the test is "whether the improper assertions have made it 'reasonably probable' that the verdict was influenced by prejudicial statements." *Waldorf v. Shuta*, 142 F.3d 601, 628 (3d Cir. 1998) (citations and internal quotations omitted).

Generally, new trials are only granted where the attorney misconduct was pervasive. *See, e.g., Blanch Road Corp. v. Bensalem Township*, 57 F.3d 253, 264 (3d Cir. 1995) (affirming grant of new trial based on finding that "counsel for Plaintiffs pursued a pattern of misconduct from opening statement through final argument" and that "the record is replete with examples of counsel misconduct that might have influenced the jury"); *Fineman v. Armstrong World Industries*, 980 F.2d 171, 206-07 (3d Cir. 1992) (affirming grant of new trial based on finding that counsel misconduct was pervasive, and stating that "often . . . a combination of improper remarks are required to persuade us of prejudicial impact"); *Draper v. Airco, Inc.*, 580 F.2d 91, 96-97 (3d Cir. 1978) ("Where, however, a closing address to the jury contains such numerous and serious violations of so many rules of proper argument as occurred here, we must conclude that it is more than reasonably probable that the verdict was influenced by the prejudicial statements"). In fact, several precedents involving a single improper remark concluded that such was not enough to support the grant of a new trial. *See, e.g., Salas v. Wang*, 846, F.2d 897, 908 (3d Cir. 1988) (noting that a single inappropriate remark did not meet the standard of *Draper*, where four specific improprieties were found); *Greate Bay Hotel & Casino v. Tose*, 34 F.3d 1227, 1236 (3d Cir. 1994) (finding that one comment during trial was not enough to prejudice the verdict); *Lucent*

4

*Technologies, Inc. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 181, 260-61 (D. Del. 2001) (finding that even if attorney statements could be considered misconduct, an isolated statement and the use of a demonstrative exhibit during closing in the course of a three week trial were not enough to show that the jury was improperly influenced).

Here, Plaintiffs allege that Defendants' counsel made an inappropriate remark during his closing statement regarding the standard of care required of Dr. Alfieri in treating Mr. Vandenbraak. (D.I. 153 at ¶ 4-5.) Plaintiffs claim that this remark was not corrected in the rest of counsel's closing argument. (*Id.* at ¶ 5.) Furthermore, Plaintiffs allege that the jury was influenced by the remark about the "minimum" standard of care, as evidenced by their question to the court during deliberations. (*Id.* at ¶ 7.)

Despite Plaintiffs arguments, I find that it is not "reasonably probable" that the jury was improperly influenced by Defendants' counsel's allegedly inappropriate remark. First, counsel for Defendants made only one allegedly improper remark during the course of a four day trial. Additionally, counsel endeavored to cure his misstatement by stating that "the standard of care is a national standard." (D.I. 153, Exhibit A at 73:9-10.) However, even if counsel did not manage to cure his own misstatement, the jury was instructed as to the definition of medical negligence. (D.I. 153, Exhibit B.) I instructed the jury that

> Each physician and healthcare provider is held to the standard of care and knowledge commonly possessed by members in good standing of his or her profession and specialty. It is not the standard of care of the most highly skilled, nor is it necessarily that of average members of this profession, since those who have somewhat less than average skills may still possess the degree of skill and care to treat patients competently.

(D.I. 153, Exhibit B at 1.) When the jury asked "how to clearly determine the 'standard of care' for providing the minimum care," they were instructed to follow the jury instructions given at the end of trial. (Trial Transcript, E-121:5-11.) The jury's use of the word "minimum" alone is not enough, in light of the case law and evidence to the contrary, to show that they were influenced by Defendants' counsel's alleged inappropriate statement. As a result, there is not evidence to support a new trial based on the alleged misconduct of Defendants' counsel during closing argument.

## IV.   CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that the Motion for New Trial is DENIED.

_____
UNITED STATES DISTRICT JUDGE

October 20, 2005
Wilmington, Delaware

6